UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 20-cv-24604-BLOOM/Otazo-Reyes**

KEVIN BROWN,

       Plaintiff,

v.

CAPTAIN S. WILLIAMS, *et al*.,

       Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Sergeant Mosley's ("Mosley") Motion to Dismiss, ECF No. [34], and Defendant Captain S. Williams' ("Williams") Motion to Dismiss, ECF No. [43] (collectively, "Motions").[1] The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons stated below, the Motions are granted.

## I. BACKGROUND

Plaintiff initiated this civil rights action on November 5, 2020. ECF No. [1] ("Complaint").[2]

---

[1] Plaintiff Kevin Brown ("Brown") brings this action against Defendants Mosley and Williams, as well as Sergeant Wadley ("Wadley") (collectively, "Defendants"). On January 29, 2021, the Court ordered that the United States Marshal Service ("USMS") effectuate service on all Defendants in this action. ECF No. [19]. At this time, service has not been effectuated on Defendant Wadley. *See* ECF Nos. [19], [22], [24], [26], [29], & [30]. The Court, however, pursuant to its duty to screen *pro se* complaints under the Prison Litigation Reform Act, also reviews whether Plaintiff has stated any cognizable claims against Wadley. *See* 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under section 1983 of this title, . . . by a prisoner . . . if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted."); 28 U.S.C. § 1915(e)(2)(b)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted[.]"); *see also Smith v. Israel*, 619 F. App'x 839, 841 n.1 (11th Cir. 2015).

[2] On December 30, 2020, Plaintiff filed a document identical to the Complaint entitled "Preliminary Statement." *See* ECF No. [15]. For purposes of this Order, the Court cites to ECF No. [1].

The Complaint alleges that on or about June 30, 2019, Defendant Williams conducted a search of the dormitory where Plaintiff was housed. *Id.* ¶ 10. While conducting the search, Defendant Williams ordered Plaintiff and other inmates "to strip down to their boxers and briefs in the presence of her and other female officers, then ordered the inmates to leave all their clothing and shoes, and walk barefooted to quad one." *Id.* ¶ 11. Thereafter, on July 2, 2019, Carolyn Brown ("Ms. Brown"), Plaintiff's ex-wife, "filed an online grievance to Assistant Warden Scott to address Williams' conduct of the strip search." *Id.* ¶ 12. The following day, Assistant Warden Scott replied to Ms. Brown, advising her that the situation was "currently being reviewed." *Id.* ¶ 13. Ms. Brown then "furthered her online grievances" to Deputy Secretary Ricky Dixon and Regional Director Brian Reid. *Id.* ¶ 14.

On August 29, 2019, Plaintiff was then transferred from E2102-Upper to D2101-Upper. *Id.* ¶ 16. Defendant Mosley escorted Plaintiff to the new cell, which was with "an incompatible inmate," who, because of his medical ailments, had been "housed alone for a great period of time." *Id.* Plaintiff alleges that the transfer resulted in "an uncomfortable and stressful environment" for him. *Id.* When asked why he was transferred, Defendant Mosley advised Plaintiff that it was due to "an institutional need." *Id.* ¶ 17. On the day of his transfer, Plaintiff spoke with both Defendants Mosley and Williams, at which time Defendant Williams purportedly threatened Plaintiff by saying: "I'm going to teach you about having your family sending emails on me." *Id.* ¶¶ 18-19. The two Defendants then walked away "laughing and joking." *Id.* ¶ 19.

On September 11, 2019, Plaintiff was transferred to another cell—from D2101-Upper to H2214-Upper. *Id.* ¶ 20. That same day, Assistant Warden Peter Heron emailed Ms. Brown, informing her that he instructed Defendant Mosley to initiate the transfer. *Id.* ¶ 21. Thereafter, Defendant Wadley saw Plaintiff on the compound, and threatened Plaintiff that "her girl [referring to Williams] is going to have someone deal with [Plaintiff] in a way he won't like if the emails

don't stop." *Id.* ¶ 22. Plaintiff responded that he was "not worried about [Wadley] or [Williams] doing nothing to me." *Id.* ¶ 23. Sometime later, Defendant Williams warned Plaintiff that "Mr. Heron, Mr. Dixon, Mr. Reid and whoever else you have 'Brown Sugar' email can't stop me. I got more pull than you think I got. Play with me!" *Id.* ¶ 24.

On December 15, 2019, Plaintiff was sitting next to his visitor in the visitation park, a change from the prior practice which required visitors to sit across from inmates. *Id.* ¶¶ 25-26. Apparently unaware of the change, Defendant Wadley ordered all inmates to sit across from their visitors. *Id.* ¶ 27. Plaintiff's visitor showed Defendant Wadley an email from Warden Morris explaining the change in practice. *Id.* ¶ 29. Defendant Wadley argued with Plaintiff over the email and left to discuss it with Defendant Williams. *Id.* ¶ 30. Shortly thereafter, Defendant Wadley returned and, apparently conceding, told visitors to "sit wherever in the hell y'all want to sit." *Id.* ¶ 31. Some of the visitors applauded Plaintiff, who, basking in his victory, looked toward Defendant Wadley and smiled. *Id.* at ¶¶ 32-33. In response, Defendant Wadley told Plaintiff, "We got something for you." *Id.* ¶ 34. Plaintiff was then "placed in administrative confinement pending a disciplinary report for reasons unrelated to the claims in this [C]omplaint." *Id.* ¶ 35.

Based on the following allegations, Plaintiff claims that Defendants violated his constitutional rights by retaliating against him after his ex-wife filed "online grievances" complaining about the June 30, 2019 strip search. Specifically, Plaintiff claims that Defendants retaliated against him, "in violation of [P]laintiff's rights to redress of grievances under the [F]irst and [F]ourteenth Amendment" when: (1) Defendants Mosely and Williams transferred Plaintiff to a cell with an incompatible inmate; (2) Defendants Williams and Wadley threatened Plaintiff; and (3) Defendants Williams and Wadley conspired to physically harm Plaintiff. *See* ECF No. [1] ¶¶ A1-A3.

On March 15, 2021 and April 14, 2021, Defendants Mosley and Williams filed their

respective Motions, ECF Nos. [34] & [43], arguing that the Complaint is subject to dismissal on three bases: (1) Plaintiff failed to exhaust his administrative remedies prior to filing his civil suit; (2) the Complaint fails to allege a First Amendment retaliation claim; and (3) the Defendants are entitled to qualified immunity.[3] Plaintiff filed a Response to each Motion, ECF Nos. [45] & [52], to which Defendants filed Replies, ECF Nos. [50] & [53]. The Motions are ripe for consideration.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)[4]

The Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a Rule 12(b)(6) motion, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court generally must accept the plaintiff's

---

[3] Because Defendants Mosley and Williams raise the identical arguments, the Court addresses them together.

[4] As it pertains to the claim against Defendant Wadley, the standard for determining whether a complaint states a claim upon which relief can be granted is the same under § 1915(e)(2)(B) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Pullen v. Sec'y, Dep't of Corr.*, No. 19-11797-C, 2019 WL 5784952, at *1 (11th Cir. 1997).

allegations as true and evaluate all plausible inferences derived from those facts in plaintiff's favor. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). "'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Nonetheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). On a 12(b) motion, courts are generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

**B. Prison Litigation Reform Act ("PLRA") Exhaustion Requirement**

Under the PLRA, a prisoner confined in a jail may not bring a § 1983 action until

administrative remedies, as are available, are exhausted. *See* 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, and the inmate who alleges harm suffered from prison conditions must file a grievance and exhaust the remedies available under a state or jail's grievance procedures as a prerequisite to a federal § 1983 action. *See Johnson v. Meadows*, 418 F.3d 1152, 1155-56 (11th Cir. 2005). Further, the PLRA requires "proper exhaustion," which demands compliance with a state's deadlines and other procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA entirely eliminates judicial discretion and instead mandates strict exhaustion, "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Further, the Supreme Court has repeatedly reaffirmed that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524).

Failure to exhaust administrative remedies is an affirmative defense under the PLRA and inmates are not required to specially plead exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The Eleventh Circuit Court of Appeals considers exhaustion of administrative remedies as a matter in abatement and not an adjudication on the merits; therefore, an exhaustion defense "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)).

"Where exhaustion — like jurisdiction, venue, and service of process — is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record." *Id.* at 1376. (citations

omitted) (footnote call numbers omitted). The Eleventh Circuit created a two-step process to guide this analysis:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citations omitted).

## III.   DISCUSSION

Defendants seek dismissal of the Complaint on three grounds: (1) Plaintiff failed to exhaust administrative remedies prior to filing his civil suit; (2) Plaintiff failed to allege the elements necessary to satisfy a First Amendment retaliation claim; and (3) the doctrine of qualified immunity bars Plaintiff's claims. *See* ECF Nos. [34] & [43]. The Court addresses each argument in turn.

### A.  Exhaustion of Administrative Remedies

"The grievance procedures promulgated by the Florida Department of Corrections ("FDOC") require an inmate to (1) file an informal grievance to the staff member responsible for the particular area of the problem, Fla. Admin. Code Ann. r. 33-103.005(1)(a); (2) file a formal grievance with the warden's office, *id.* at r. 33-103.006(1); and (3) submit an appeal to the Office of the Secretary of the FDOC, *id.* at r. 33-103.007(1)." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010); *see also Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir.

2015). "To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011 and must either receive a response or wait a certain period of time before proceeding to the next step." *Pavao v. Sims*, 679 F. App'x 819, 824 (11th Cir. 2017) (per curiam) (citing Fla. Admin. Code Ann. r. 33-103.011(4)).

"Informal grievances must be received by the institution within 20 days of when the incident or action being grieved occurred." *Jenkins v. Sloan*, 826 F. App'x 833, 836 (11th Cir. 2020) (per curiam) (citing Fla. Admin. Code Ann. r. 33-103.011). "For formal grievances, the form must be received by the institution no later than 15 days from either the incident or the date of the response to the informal grievance, depending on what route the formal grievance is following." *Id.* The inmate's appeal to the Office of the Secretary "[m]ust be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code Ann. r. 33-103.011(c).

### i. The Informal Grievance

On September 7, 2019, Plaintiff filed informal grievance # 401-1909-057 regarding the alleged retaliatory August 29, 2019 cell transfer. ECF No. [34-4] at 1-2, [43-4] at 1-2 ("Informal Grievance"); Affidavit of Kevin Brown, ECF No. [45] at 5 ¶ 2; Affidavit of Alan McManus, ECF No. [34-1] ¶ 18. On September 16, 2019, the Informal Grievance was denied because the "issue was addressed by the housing sergeant on 9/11/19 at 10am with your move to H2 2145." *Id.* Defendants maintain that Plaintiff failed to exhaust his administrative remedies by failing to appeal the denial of his Informal Grievance. ECF Nos. [34] & [43]. Plaintiff disagrees. ECF Nos. [45] & [52].

Plaintiff responds that he "appealed [the Informal Grievance] within the time frame [allotted] by dropping it in the grievance box located at the center gate while at Everglades Correctional Institution." ECF No. [45] at 5. Plaintiff states that because he did not receive a

response to his appeal within twenty-five days, he "filed an appeal to Tallahassee by placing [his] grievance in a sealed envelope." *Id.* Defendant Mosley disagrees that any appeal was filed. In support of his position, he points to the affidavit of Alan McManus, Bureau Chief of the Bureau of Policy Management and Inmate Appeals, who provided sworn testimony that "[t]here is no record of any escalation or appeal of this denial[,]" and that the Informal Grievance "does not satisfy Plaintiff's obligation to grieve the incident contained in his complaint." ECF No. [34-1] at ¶ 18; *see also* Appeals Activity, ECF No. [34-3].

As to Defendant Williams' claim, Plaintiff maintains that in September 2019, he filed a grievance pursuant to Fla. Admin. Code r. 33-103.007 directly with the Federal Department of Corrections ("FDOC") regarding the threats made by Defendants Williams and Wadley because of Ms. Brown's emails. ECF No. [52] at 6. Plaintiff asserts that he dropped the letter in the grievance box located at Everglades Correctional Institution and that the FDOC never responded. *Id.* Defendant William, however, disagrees that any informal grievance was filed directly with the FDOC, ECF No. [53] at 4, highlighting the "unspecified" nature or date of the grievance purportedly sent to the FDOC. *See* ECF No. [53] at 4. Defendant Williams also points out that Plaintiff's claim about the "unspecified" direct grievance conflicts with Plaintiff's affidavit filed in response to Mosley's Motion. Specifically, Plaintiff first described appealing the denial of the Informal Grievance and "ultimately filing an appeal to Tallahassee[,]" ECF No. [45] at 5, but later takes the position that he filed a grievance directly with the FDOC, ECF No. [52] at 5.[5]

---

[5] Indeed, it is unclear whether Plaintiff is recharacterizing his alleged appeal of the Informal Grievance or is alleging that he filed a separate grievance directly with the FDOC. Nevertheless, there is no record of a direct grievance in either the informal grievance log or the appeals log. *See* ECF Nos. [43-2] & [43-3].

### ii. *Turner* Step One

As stated above, administrative exhaustion is a three-step process where the prisoner must first file an informal grievance with a designated staff member, then file a formal grievance with the institution's warden, and finally, submit an appeal to the Secretary of the FDOC. *See* Fla. Admin. Code Ann. r. 33-103.005-.007. The institution is required to respond within fifteen days of receiving an informal grievance and within twenty days of receiving a formal grievance. *See id.* at r. 33-103.011. For direct grievances to the Secretary of the FDOC, the waiting period is thirty calendar days. *See id.* "[E]xpiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process." *Id.*

First, as to Plaintiff's claim that Defendants Wadley and Williams conspired to physically harm Plaintiff in retaliation for Ms. Brown's online grievances, Plaintiff does not dispute that he failed to exhaust his administrative remedies as to this claim. Therefore, the Court finds that this claim is unexhausted.

Regarding the purported retaliatory cell transfer, the parties agree that Plaintiff exhausted the first step of the three-step process by filing the Informal Grievance. Plaintiff claims that he appealed the denial of the Informal Grievance, received no response, and twenty-five days later filed an appeal to the Secretary of the FDOC. *See* ECF No. [45] at 5. Defendants claim that there is no record of any such appeal to either the institution or the FDOC. *See* ECF No. [34-1] ¶ 18. The Court accepts Plaintiff's allegations of facts as true—namely, that the Plaintiff exhausted his administrative remedies regarding his complaint that his cell was transferred in retaliation for Ms. Brown's emails.

At this phase of the *Turner* analysis, the Court also accepts Plaintiff's allegations of exhaustion regarding his claim that Defendants Williams and Wadley threatened him in retaliation for Ms. Brown's emails. Plaintiff argues that "pursuant to chapter 33-103.007", he filed a

grievance directly to the Secretary of the FDOC regarding threats Defendants Williams and Wadley made to him in response to Ms. Brown's emails. ECF No. [52] at 5. Under Florida's Administrative Code, "grievances of reprisals . . . may be filed directly with the Office of the Secretary[.]" Fla. Admin Code r. 33-103.007(3)(a). The Code defines a "grievance of reprisal" as "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." Fla. Admin. Code r. 33-103.002(9). Taking Plaintiff's allegations as true, the citation to Fla. Admin. Code r. 33-103.007, along with the subject matter of the grievance, entitles Plaintiff to bypass the first two steps because the grievance of reprisal complained of Defendant Williams' and Wadley's retaliatory threats.

### iii. *Turner* Step Two[6]

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Arias v. Perez*, No. 17-20619-CIV, 2018 WL 10622892, at *2 (S.D. Fla. Feb. 23, 2018), *aff'd*, 758 F. App'x 878 (11th Cir. 2019). Based on the Court's findings, as set forth below, Plaintiff cannot establish that he has exhausted his administrative remedies.

Plaintiff offers no support that he exhausted his administrative remedies other than a self-serving affidavit. First, Plaintiff's argument that he appealed the denial of his Informal Grievance to the institution and to the FDOC is without any substantiation. No record of either appeal appears

---

[6] Plaintiff cites non-binding and out-of-circuit case law for the proposition that where a factual dispute exists as to whether plaintiff exhausted administrative remedies, the matter cannot be resolved at the motion to dismiss phase. *See* ECF No. [52] at 2 (citing *Sweet v. Wende Corr. Facility*, 253 F. Supp. 2d 492 (W.D.N.Y. 2003). Plaintiff is incorrect. As outlined in detail above, raising failure to exhaust administrative remedies is proper in a motion to dismiss. The Eleventh Circuit requires district courts to conduct the *Turner* two-step analysis. *See Montalban v. Doe*, 801 F. App'x 710, 715 (11th Cir. 2020).

on appeals activity log. *See* ECF No. [34-1] ¶ 18; *see also* ECF Nos. [34-3], [43-3]. Plaintiff does not provide the date he submitted either appeal nor does he explain the reasons he sought to appeal the decision. Defendant Mosley's explanation that Plaintiff was satisfied with the outcome of the informal grievance and did not appeal it due to being transferred to a new cell is credible. *See* ECF No. [34] at 10. Moreover, Plaintiff did not provide copies of the alleged appeals. *See Nail v. Collado*, No. 15-23036-CIV, 2019 WL 1034186, at * 5 (S.D. Fla. Mar. 4, 2019) ("Thus, it is clear that Florida law expected Plaintiff to retain copies of filed grievances throughout his administrative remedy process.").

Neither does Plaintiff provide any record evidence to support his claim that he filed a grievance of reprisal against Defendants Williams and Wadley. Plaintiff merely alleges that he filed the grievance in September 2019. Other than to say that the FDOC never responded, Plaintiff does not elaborate on the content or context of his grievances.

Plaintiff's consistent pattern of filing grievances demonstrates that he was not actually deterred from filing grievances. *See Schlicher v. Fla Dep't of Corrs.*, 399 F. App'x 538, 539 (11th Cir. 2010) (affirming dismissal for failure to exhaust where plaintiff argued that prison officials prevented him from filing grievances through threats, but nonetheless still filed several insufficient grievances). Plaintiff's claims that his grievances were never responded to are questionable given the well-documented history of grievances and responses Defendants submitted. *See generally* ECF Nos. [34-1], [34-2], [34-3], [43-1], [43-2], [43-3]. Further, it shows that prior and latter grievances were tracked in FDOC's system and responded to, weighing against Plaintiff's claims that he filed multiple grievances to which neither the institution nor FDOC responded. Moreover, Plaintiff makes no claim that the grievance process was unavailable. *See Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017).

Finally, Plaintiff's responses to the Motions conflict with one another, casting doubt on

both claims. The Court is left with only Plaintiff's vague and conclusory statement that he exhausted his administrative remedies as to the retaliatory cell transfer and the threats. Thus, Defendants have met their burden of proof to show that Plaintiff did not exhaust his administrative remedies. Defendants' Motions are granted for failure to exhaust administrative remedies.

### B.  First Amendment Retaliation

In the alternative, Defendants Mosley and Williams argue that dismissal is warranted because the Plaintiff has failed to state a claim for retaliation. Plaintiff alleges that Defendants violated his First and Fourteenth Amendment rights when they retaliated against him "for the filing of online grievances." ECF No. [1] at ¶¶ A(1)-(3). Plaintiff alleges in response to the filing of online grievances, Defendants Mosley and Williams retaliated against him when they transferred Plaintiff to a cell with an incompatible inmate, *id.* at ¶¶ 16, A(2), and Defendants Williams and Wadley retaliated against him when they threatened and conspired to physically harm Plaintiff, *id.* at ¶¶ 19, 22-24, A(1), A(3).

To prevail on a First Amendment retaliation claim, Plaintiff "must establish that (1) he engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (citation omitted). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted).

### i.  Protected speech

Plaintiff has failed to plausibly allege that the online grievances, sent to correctional staff by his ex-wife Carolyn Brown, were protected speech. "It is an established principle of

constitutional law that an inmate is considered to be exercising *his* First Amendment right to freedom of speech when *he* complains to the prison's administrators about the conditions of *his* confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (emphasis added) (citing *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *see also Hollins v. Samuals*, 540 F. App'x 937, 939 (11th Cir. 2013) ("[W]e've found no authority holding that the First Amendment protects a prisoner's conduct that involves no form of complaint or petition for redress and does not even involve verbal or written communication with someone."). The Florida Administrative Code defines a "grievance" as "[a] written complaint or petition, either informal or formal, *by an inmate* concerning an incident or condition within an institution . . . which affects the inmate complainant *personally*." Fla. Admin. Code. Ann. r. 33-103.002(6) (alterations added). Plaintiff asserts that the acts of retaliation were in response to the "filing of online grievances." ECF No. [1] at ¶¶ A(1)-(3). However, Plaintiff did not file the referenced "online grievances." He is, instead, referring to a series of "online grievances," authored and sent by Ms. Brown, in which she complains about the June 30, 2019 strip search. *See id.* at ¶¶ 12-15. Plaintiff fails to cite any legal support for the proposition that he is entitled to seek redress for Ms. Brown's speech, or, alternatively, that he was prevented from filing grievances and that Ms. Brown's speech should be considered his speech. Accordingly, because Plaintiff has not plausibly alleged that he engaged in constitutionally protected conduct, Plaintiff's First Amendment retaliation claims fail.

### ii.  Adverse action

Plaintiff has also failed to plausibly allege that he suffered an adverse action from either the cell transfer or the alleged threats. A "plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennet v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). The Eleventh

Case No. 20-cv-24604-BLOOM/Otazo-Reyes

Circuit has recognized that, following the filing of grievances, disciplinary confinement[7] or a retaliatory transfer to another facility[8] may constitute materially adverse actions.

With respect to the cell transfer, Plaintiff alleges that he was transferred to a cell with an "incompatible inmate who had been housed alone for a great period of time due to his various medical issues which resulted in an uncomfortable and stressful environment[.]" ECF No. [1] ¶ 16. Plaintiff was only in the cell with the "incompatible inmate" from August 29, 2019 to September 11, 2019, a total of fourteen days. ECF No. [1] ¶¶ 16, 21. *See Sherman v. Quest*, No. 18-60973-CIV, 2020 WL 6791100 at \*21 (S.D. Fla. Nov. 19, 2020) (an intra-prison transfer to a "fairly-equivalent (but windowless)" cell "does not constitute an adverse action unless the transfer is accompanied by something more."); *see also Neitzke v. Williams*, 490 U.S. 319, 323-34 (1989) ("Because the law is clear that prisoners have no constitutionally protected liberty interest in remaining in a particular wing of a prison . . . [plaintiff] could make no rational argument in law or fact that his transfer violated due process."). Plaintiff has failed to allege any facts supporting a plausible inference that the cell transfer would have deterred an inmate of ordinary firmness from the exercise of his First Amendment rights.

Moreover, Plaintiff also fails to allege that the purported threats were sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. Indeed, mere words without accompanying actions do not constitute an adverse action. *See Hernandez v. Fla. Dep't of*

---

[7] *See Logan v. Hall*, 604 F. App'x 838, 841 (11th Cir. 2015) (per curiam) (finding prisoner stated a claim where "in retaliation for filing lawsuits and grievances, prison officials deliberately falsified reports, which resulted in him spending excessive time in disciplinary and close-management confinement and losing his yard privileges."); *O'Bryant v. Finch*, 673 F.3d 1207, 1215-16 (11th Cir. 2011) (per curiam) (stating that "30 days' disciplinary confinement" constituted "adverse action" for the purposes of a retaliation claim).

[8] *See Smith v. Governor for Ala.*, 562 F. App'x 806, 815 (11th Cir. 2014) (per curiam) ("[P]rison transfers qualify as adverse actions for purposes of retaliation.") (citation omitted); *see also Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. June 28, 2013) (per curiam) ("A transfer to a more dangerous prison as a penalty for the exercise of constitutional rights has the potential to be such a deterrent.") (citation omitted).

*Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (per curiam) (finding in the Eighth Amendment context that "verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim."); *Rodriguez v. Scott*, 18-14005-CIV, 2018 WL 9617230 at *5-6 (S.D. Fla. Mar. 7, 2018) ("[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations . . . ." (quoting *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983))). The threats alleged in the Complaint do not threaten physical violence and are not the type to cause extreme psychological harm. *See* ECF No. [1] ¶ 19 ("I'm going to teach you about having your family sending emails on me."); *Id.* ¶ 22 ("[Williams] is going to have someone deal with him in a way he won't like if the emails don't stop."); *Id.* ¶ 24. "I got more pull than you think I got. Play with me!"). In fact, Plaintiff alleged in the Complaint that he was "not worried about [Wadley] or Captain Williams doing nothing [sic] to me." *Id.* ¶ 23. As such, Plaintiff has failed to allege that the threats made by Defendants Wadley or Williams violated his constitutional rights.

### iii. Causation

Lastly, Plaintiff has not alleged a causal connection between Ms. Brown's "online grievances" and his cell transfer. Traditional indicia of causation, such as "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory act, or [] a pattern of antagonism coupled with timing to establish a causal link." *See Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1405 (S.D. Fla. 2014) (citations omitted). On July 2, 2019, Ms. Brown filed her first online grievance addressed to Assistant Warden Scott complaining about the presence of female correctional officers, including Defendant Williams, during the June 30, 2019 strip search. ECF No. [1] ¶ 10-12. Sometime thereafter, Ms. Brown "furthered her online grievances" to Deputy Secretary Ricky Dixon and Regional Direction Brian Reid. *Id.* ¶ 14-15. However, Plaintiff was not

transferred to a different cell until August 29, 2019, nearly two months after the first online grievance. *Id.* ¶ 16.

Plaintiff's allegations do not support an inference that Defendant Williams transferred Plaintiff in retaliation for Ms. Brown's emails. Plaintiff has not alleged that prior to his first transfer, Defendants Williams or Mosely were aware of the online grievances. Nor has Plaintiff alleged that Defendant Williams either had the authority to transfer inmates or that he personally participated in the decision to transfer Plaintiff. Moreover, when Plaintiff asked Defendant Mosley the reason for the transfer, he was told "it was an institutional need." *Id.* ¶ 17. As such, Plaintiff has failed to plausibly allege a causal connection between the "online grievances" and his cell transfer.

For the foregoing reasons, the Court finds that Plaintiff has failed to plausibly allege a claim for First Amendment retaliation, and the Motions are granted on this basis.

### C. Conspiracy to Harm Plaintiff

To make a showing of a successful § 1983 claim for conspiracy, a plaintiff must allege a conspiracy that resulted in the actual denial of some underlying constitutional rights. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010). The plaintiff must show that the parties "reached an understanding to deny the plaintiff his or her rights." *Id.* (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990)). Additionally, the plaintiff must establish that the conspiratorial acts impinge upon the federal right. *See Bendiburg*, 909 F.2d at 468 (citing *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990)). To avoid dismissal on a motion to dismiss, a plaintiff must make particularized allegations that a conspiracy exists. *See Hansel v. All Gone Towing Co.*, 132 F. App'x. 308, 309 (11th Cir. 2005) (per curiam) (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)).

In the Complaint, Plaintiff claims that Defendants Wadley and Williams conspired to physically harm Plaintiff due to the filing of the online grievances. *Id.* ¶ A3. According to the Complaint, Defendant Wadley told Plaintiff, "her girl [referring to Williams] is going to have someone deal with [Plaintiff] in a way he won't like if the emails don't stop." ECF No. [1] ¶ 22. Later, following the disagreement between Defendant Wadley, Plaintiff, and Plaintiff's visitor over whether the visitor and Plaintiff could sit next to each other, Defendant Wadley left to confer with Defendant Williams over the visitation policy. When Defendant Wadley returned, Plaintiff and his visitor were permitted to sit next to each other. Defendant Wadley told Plaintiff, "We got something for you[,]" *id.* ¶ 34, and Plaintiff states he was then placed in administrative confinement, *see id.* ¶ 35. However, Plaintiff admits the administrative confinement was "pending a disciplinary report for reasons unrelated to the claims in this [C]omplaint." *Id.* ¶ 35.

Here, Plaintiff fails to allege that he was denied an underlying constitutional right, nor does he allege that Defendants Wadley and Williams "reached an understanding" to deny Plaintiff his rights. *See Grider*, 618 F.3d at 1260. Plaintiff's allegations are wholly vague and conclusory as to his claim that Defendants Wadley and Williams conspired to harm him and, as such, are due to be dismissed. *See Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

### D.  Qualified Immunity

Defendants Mosley and Williams argue that even if Plaintiff stated a plausible claim for First Amendment retaliation, they are nonetheless entitled to qualified immunity because they have not violated a clearly established right. *See* ECF Nos. [34] at 13-22 and [43] at 12-20. Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The qualified immunity doctrine therefore represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *Id.* at 1233.

"Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). To prevail on a motion to dismiss based on qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Storck*, 354 F.3d at 1314 (citing *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).

"A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or

under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). "Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply." *Storck*, 354 F.3d at 1314 (citing *Lee*, 284 F.3d at 1194).

Here, Plaintiff does not dispute that Defendants Mosley and Williams were acting within the scope of their discretionary function when the alleged retaliatory acts occurred. *See generally* ECF Nos. [1], [45], and [52]. Where a plaintiff does not dispute that the defendants were acting pursuant to their discretionary authority at the time of the alleged constitutional violations, the first prong of the qualified immunity analysis is satisfied. *See Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013); *see also Williams v. Brown*, 347 F. App'x 429, 435 (11th Cir. 2009) (finding defendant "acted within his discretionary authority" when he transferred the plaintiff to another facility). Additionally, Plaintiff concedes that Defendant Mosely was "in charge of housing" and that Defendant Mosely advised Plaintiff that the cell transfer was due to "an institutional need." *Id.* ¶¶ 7, 17. Thus, because Defendants Mosley and Williams satisfied the discretionary authority requirement, the burden shifts to Plaintiff to establish that qualified immunity is inapplicable here.

The United States Supreme Court has outlined a two-part test to determine whether a plaintiff can meet its burden of rebutting a qualified immunity defense. First, the court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Id.* Courts

"may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 951 (11th Cir. 2019) (citing *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

Moreover, "only Supreme Court cases, Eleventh Circuit caselaw, and [Florida] Supreme Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland*, 382 F.3d at 1231-32 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Lee*, 284 F.3d at 1195). "To be clearly established, the contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)). Indeed, "in the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Nonetheless, "[t]he Supreme Court and [the Eleventh Circuit] have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights." *Jones*, 174 F.3d at 1282 (citing *Anderson*, 483 U.S. at 639); *see also Walker v. Schwalbe*, 112 F.3d 1127, 1132 (11th Cir. 1997) ("Plaintiffs may not discharge their burden [of showing that a right is clearly established] by referring to general rules and abstract rights."). "Qualified immunity focuses on the actual, specific details of concrete cases." *Walker*, 112 F.3d at 1132. Indeed, "'clearly established law' should not be defined 'at a high level of generality'" but "must be 'particularized' to the facts of the case" because otherwise, "'[p]laintiffs would be able to

convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted).

Construing the allegations in the light most favorable to Plaintiff, the Court cannot conclude that Defendants Mosley and Williams violated any constitutional right, much less one that was clearly established at the time of the challenged conduct. As explained, Plaintiff has failed to allege that the online grievances sent by Ms. Brown to correctional staff qualify as Plaintiff's protected speech, that Defendants Mosley and Williams had Plaintiff transferred to another cell or that the intra-prison transfer qualifies as unlawful conduct, or that there is a causal connection between Mss. Brown's online grievances and Plaintiff's cell transfers. *See supra* Section III.B; *see also Neitzke*, 490 U.S. at 323-34; *Smith*, 532 F.3d at 1276. Plaintiff has also failed to plausibly allege that Defendant Williams' purported threats rise to the level of a constitutional violation, or that Defendant Williams conspired with Defendant Wadley to physically harm Plaintiff in retaliation for Ms. Brown's emails. *See supra* Section III.B-C. *Hernandez*, 281 F. App'x at 866; *Fullman*, 739 F.2d at 557. Consequently, Defendants Mosley and Williams are entitled to dismissal of this action based on qualified immunity grounds.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Sergeant Mosley's Motion to Dismiss, **ECF No. [34]**, is **GRANTED**.

2. Defendant Captain S. Williams' Motion to Dismiss, **ECF No. [43]**, is **GRANTED**

3. Plaintiff's Complaint, **ECF No. [1]**, is **DISMISSED with prejudice** as to claims against Sergeant Mosley and Captain S. Williams. Plaintiff's Complaint is **DISMISSED without prejudice** as to his claim against Sergeant Wadley.

4. All pending motions shall be **DENIED as moot**.

5.   The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 11, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Kevin Brown, *Pro Se*
#11417
Desoto Annex
Inmate Mail/Parcels
13617 SE Highway 70
Arcadia, FL 34266